UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CHRISTOPHER T. POSNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | NO. 3:13-CV-435 |
| | ) | (VARLAN/GUYTON) |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 15, 16] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 17, 18]. Plaintiff Christopher T. Posner ("Plaintiff") seeks judicial review of the decision by the Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

The Plaintiff protectively filed an application for supplemental security income on December 22, 2010, alleging he became unable to work on November 20, 2010. The Plaintiff's application was denied initially and upon reconsideration. Plaintiff then submitted a written request for a hearing which was held before ALJ James Dixon on March 28, 2012, in Knoxville, Tennessee. On May 9, 2013, the ALJ found that the Plaintiff was not disabled. The Appeals

Council denied the Plaintiff's request for review on May 29, 2013; thus, the decision of the ALJ became the final decision of the Commissioner.

The Plaintiff now seeks judicial review of the Commissioner's decision.

I.  **ALJ FINDINGS**

> The ALJ made the following findings:
>
> 1. The claimant has not engaged in substantial gainful activity since December 22, 2010, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: HIV, asymptomatic HIV, affective mood disorders, and essential hypertension. The claimant alleged anxiety, an affective mood disorder, HIV symptomatic, fatigue, weakness, and shortness of breath (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work involving lifting/carrying (including upward pulling) of fifty pounds occasionally and twenty-five pounds frequently. The claimant can stand, walk and sit six hours out of an eight-hour workday. The claimant can perform unlimited pushing and pulling (including foot and hand controls) within exertional limitations. The claimant had no postural, manipulative, visual communicative or environmental limitations. The claimant would be able to understand and remember simple and multi-step instructions. The claimant would be able to attend to simple multi-step tasks in segmented two-hour intervals with appropriate rest periods in a routine eight-hour day and would be able to complete a routine workweek. The claimant should have no social interaction with the general-public, but would be able to interact with peers/authority figures. The claimant would work better with things rather than people and would be able to adapt to routine infrequent changes in the workplace.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on March 26, 1967 and was 43 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since December 22, 2010, the date the application was filed (20 CFR 416.920(g)).

[Tr. 12-18].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, a plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

>   1. If claimant is doing substantial gainful activity, he is not disabled.
>
>   2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
>   3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
>   4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
>   5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her

v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.

1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving her entitlement to benefits. Boyes v. Sec'y of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. POSITIONS OF THE PARTIES

The Plaintiff raises a single allegation of error on appeal. The Plaintiff argues that his residual functional capacity ("RFC") is not supported by substantial evidence because the ALJ failed to properly apply the treating physician rule. More specifically, the Plaintiff first argues

that the ALJ's decision is not supported by substantial evidence because he ignored the opinion of treating psychologist Dr. Frances Palin and, instead, relied on non-treating, non-examining physicians' opinions without good reasons. [Doc. 16 at 10]. Second, the Plaintiff alleges that the ALJ failed to incorporate the limitations contained in the report of consultant examiner Dr. Tracy Allred in the RFC determination. [Id. at 14]. Next, the Plaintiff asserts that the ALJ erred in finding an unsigned, unnamed Physical RFC Assessment completed by a state agency consultant "fully persuasive." [Id. at 13]. Finally, the Plaintiff argues that the ALJ erroneously found a Mental RFC Assessment to be "fully persuasive" as the state agency consultant, Dr. George Davis, only had access to a single consultative examiner's report but none of the Plaintiff's treating mental health records. [Id. at 14].

The Commissioner responds that the ALJ provided good reasons—including that Dr. Palin's opinion was inconsistent with the majority of the medical record—which are supported by the record for according the treating psychologist's opinion "no weight." [Doc. 18 at 4]. Further, the Commissioner argues that the ALJ did take Dr. Allred's notations of the Plaintiff's limitations into account. [Id. at 8]. When making the RFC determination, the Commissioner states that the ALJ translated Dr. Allred's nonspecific qualifying terms "moderately" and "markedly" into specific work-related capacity limitations. [Id.]. Lastly, the Commissioner contends that the unsigned, unnamed Physical RFC Assessment was properly considered since the assessment was later confirmed by a second state agency physician, Dr. Kanika Chaudhuri, and that any state agency medical and psychological consultants would be highly qualified. [Id. at 9]. The Commissioner further states that the ALJ may not have explicitly referred to the Mental RFC Assessment completed by Dr. Davis, but the ALJ did account for the noted limitations in his RFC determination. [Id.].

The Plaintiff filed a reply asserting that the Commissioner fails to point to "anything within the four corners of the ALJ's decision showing that the ALJ properly applied the treating physician rule." [Doc. 19 at 3].

V.   ANALYSIS

The Plaintiff contends that because the ALJ failed to assign any weight to the opinion of Dr. Palin, the ALJ's RFC determination was not supported by substantial evidence. [Doc. 16 at 11]. The Plaintiff asserts that the ALJ's assessment of Dr. Palin's opinion is incorrect because the ALJ failed to mention any of Dr. Palin's treatment notes as well as the numerous therapy sessions Plaintiff attended with Dr. Palin. [Id.] In addition, the Plaintiff states that Dr. Palin's opinion is consistent with other medical evidence in the medical record including Dr. Allred's opinion—an opinion which the ALJ granted "significant weight" [Tr. 15]—because both Dr. Palin and Dr. Allred included social and daily limitations in their respective reports. [Doc. 16 at 12]. In addition, the Plaintiff states that the Mental RFC Assessment completed by a state agency psychologist is not supported by the record because the state agency consultant who completed the assessment only had access to the consultative examination from Dr. Allred but no other mental health records, namely that of Dr. Palin. [Id. at 14]. The Plaintiff argues that the opinion of a non-reviewing examiner who does not review the complete medical record cannot be used as a material reason to deny benefits. [Id.].

The Commissioner asserts that the ALJ properly accorded "no weight" to the opinion of Dr. Palin as the ALJ determined that the opinion was inconsistent with the majority of the medical records. [Doc. 18 at 4]. In making his determination, the ALJ considered that the Plaintiff had never been hospitalized for his mental symptoms, and the ALJ recognized that it

was not clear what objective tests Dr. Palin performed to arrive at her opinion. [Id. at 6]. Further, the Commissioner points out that Dr. Allred stated that the Plaintiff was cooperative, had logical thought processes, was fully alert, and his cognitive ability was relatively intact which is inconsistent with Dr. Palin's opinion. [Id. (citing Tr. 205)].

The Commissioner also argues that the ALJ correctly considered the Plaintiff's daily activities once he decided to give the treating psychologist's opinion "no weight." [Doc. 18 at 6]. The ALJ opined that Dr. Palin's assertion that the Plaintiff experienced difficulties with completing daily tasks was not supported by the evidence in the record showing that the Plaintiff cooked, cleaned, gardened, managed his money, drove, and had satisfactory personal hygiene. [Id. at 7]. The Commissioner asserts that even though the ALJ did not explicitly discuss the Mental RFC Assessment, he accounted for the limitations as evidenced by the ALJ's RFC findings. [Id. at 9]. The evidence considered by the ALJ constitutes good reason, according to the Commissioner, for rejecting Dr. Palin's opinion. [Id. at 7].

On June 17, 2011, Dr. Palin performed a behavioral health intake with the Plaintiff and began seeing him as a patient. [Tr. 256-57]. During the intake, Dr. Palin observed that the Plaintiff was "fidgety," "nervous," and "seemed afraid to explore presenting issues." [Id.]. She classified his mood as "Anxious, Depressed," and deemed his affect to be "Restricted." [Id.]. Dr. Palin saw the Plaintiff again on July 19, 2011, for another session during which Dr. Palin notes she "[c]ontinued the process of rapport building and information gathering" with the Plaintiff. [Id. at 255]. Over the next 10 months, Dr. Palin continued treating the Plaintiff, consistently noting "poor concentration" and "inconsistent memory." [Tr. 241-56].

On March 27, 2012, Dr. Palin sent a letter to the Plaintiff's counsel. [Tr. 261]. Dr. Palin stated that the Plaintiff was currently diagnosed with Major Depression (Recurrent, Moderate)

and Anxiety Disorder NOS. [Id.]. She reminded counsel that the Plaintiff is living with HIV and that his condition impacts both his mental and physical health. [Id.]. Further, Dr. Palin opined that it is important to note that despite the Plaintiff's efforts, his mental health troubles have and can have negative impacts on various areas of functioning. [Id.]. She then provided examples of ways in which the Plaintiff's functioning is currently impaired including impaired memory, concentration problems, difficulties completing tasks, problems making basic day-to-day decisions and completing basic activities of daily living, social isolation due to anxiety, obsessiveness, and frequent thoughts related to a desire to die. [Id.]. Regarding his social anxiety, Dr. Palin further observed that the Plaintiff has a "tendency to smirk/laugh when he feels anxious, embarrassed, and/or unsure how to respond to questions." [Id.].

In the disability determination, the ALJ stated the following regarding Dr. Palin's opinion:

> On March 27, 2012, the claimant presented to Franc[e]s Palin, Ph.D., for a mental evaluation. It was noted that the claimant attended therapy sessions consistently. It was also noted that despite his efforts to maintain routine functioning, his mental health difficulties have a negative impact on various domains of functioning. The claimant's mental health impairments result in concentration problems, difficulties completing tasks, and completing basic activities of daily living (Exhibit 11F).
>
> The undersigned grants no weight to the opinion of Dr. Palin as it is completely inconsistent with the majority of the medical record. Dr. Palin's opinion is not supported by objective medical evidence to substantiate the negative impact of claimant's alleged mental health condition. Dr. Palin opined that the claimant would have difficulties completing tasks and concentrating, yet the medical record revealed the claimant could perform his activities of daily living with no difficulties.

[Tr. 16].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." SSR 96-2p, 1996 WL 374188 at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ. See King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984); Sullenger v. Comm'r of Soc. Sec., 255 F. App'x 988, 992 (6th Cir. Nov. 28, 2007).

While finding that the treating physician's opinion is inconsistent with other components of the medical record can be grounds for denying the opinion controlling weight, it does not automatically justify granting the opinion no weight. See Blakely v. Comm'r of Soc. Sec., 581

F.3d 399, 408 (6th Cir. 2009). The treating physician's opinion should still be granted deference and weighed using the factors found in 20 C.F.R. § 404.1527. Blakely, 581 F.3d at 408.

The Court finds that the ALJ did not properly address and weigh Dr. Palin's opinion. The regulations specifically state that Dr. Palin's opinion is entitled to controlling weight if it is well-supported and is not inconsistent with other evidence in the record. Looking at the "other evidence" relied on by the ALJ, the Court cannot say that substantial evidence supports an assignment of "no weight" to Dr. Palin's opinion.

First, the ALJ appears to give "significant weight" to a consultative examination performed by Dr. Allred on February 21, 2011. [Tr. 204-07]. Based upon the examination, Dr. Allred opined that the Plaintiff had the following limitations: (1) ability to understand and remember is mildly limited; (2) ability to sustain concentration and persistence is moderately limited; (3) social interaction is moderately to markedly limited; and (4) ability to adapt and tolerate stress associated with daily activities is moderately to markedly limited. [Id. at 206]. When comparing Dr. Allred's opinion with Dr. Palin's March 2012 opinion, the Court is unable to distinguish any significant differences. For example, Dr. Palin similarly opined that "[the Plaintiff] demonstrates impairments in his ability to complete activities of daily living, social functioning, neuropsychological functioning (e.g., learning, memory, concentration), and adaptation to change." [Tr. 261]. Aside from the Plaintiff's daily living activities, the ALJ failed to identify any specific evidence in the record or offer any explanation showing how Dr. Palin's opinion is "completely inconsistent with the majority of the medical records." See Glenn v. Comm'r Soc. Sec., No. 3:12-CV-79, 2012 WL 5378751, *9 n.11 (S.D. Ohio Oct. 30, 2012) (holding that an ALJ may consider a claimant's daily activities in evaluating disability, however,

the list of activities can only stand as substantial evidence, not in isolation, but in the context of the record as a whole).

Second, the ALJ appears to have adopted the Mental RFC Assessment but never mentions the assessment in his opinion nor assigns the assessment a specific weight. The ALJ's finding that the Plaintiff would be able to attend to simple multi-step tasks, would be able to complete a routine workweek, would work better with things rather than people, and should not interact with the general-public [see finding 4, Tr. 13] mirrors section III of the Mental RFC Assessment [see Mental Residual Functional Capacity Assessment, section III, Tr. 225.]. Thus, the Court assumes that when the ALJ stated that he found the state agency medical consultants' opinions "fully persuasive," this included the Mental RFC Assessment as well. As such, the ALJ was required to explain the weight given to the Mental RFC Assessment. See Gayheart v. Comm'r of Soc. Sec., 710 F. 3d 365, 376 (6th Cir. 2013); Soc. Sec. Rul. 96-6p, 1996 WL 374180, *2-3 (1996). State agency opinions are to be "weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources." Soc. Sec. Rul. 96-6p at *2. Here, the ALJ did not discuss the Mental RFC Assessment nor did he explain why he found it "fully persuasive."

Furthermore, the Plaintiff takes issue with the fact that the Mental RFC Assessment appears to only be based upon a review of Dr. Allred's consultative examination. The Plaintiff argues that the opinion of a non-reviewing examiner who does not review the complete medical record cannot be used as a material reason to deny benefits. [Id.]. The Court agrees. The Mental RFC Assessment, in and of itself, is insufficient in this case to support the ALJ's conclusion where the assessment was based only on one piece of the medical record—the

opinion of consultative examiner Dr. Allred. [Tr. 221]. Accordingly, the Court finds that the ALJ's opinion is not supported by substantial evidence for this reason as well.

Even assuming *arguendo* that the ALJ was correct in denying Dr. Palin's opinion controlling weight, the Court finds that the ALJ failed to provide sufficiently specific "good reasons" for doing so. Once the ALJ decides to deny the treating physician's opinion controlling weight, he is required to balance the factors set forth in 20 C.F.R. § 404.1527(c)(2) to determine what weight the opinion was due. See Gayheart, 710 F.3d at 376 ("If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence.") (internal and external citations omitted).

As quoted above, the ALJ assigned "no weight" to Dr. Palin's opinion because it is completely inconsistent with the majority of the medical record and is supported by no objective medical evidence. [Tr. 16]. However, the Court is not persuaded that those statements alone are enough to satisfy the "good reason" requirement. The cited reasons are too vague to grant reviewers a clear understanding of the reason for declining to accept the opinion. The Court also fails to see how Dr. Palin's opinion is completely inconsistent. As already discussed above, the Court is unable distinguish Drs. Palin and Allred's opinion in any meaningful way without substituting its own opinion as to the perceived inconsistencies. Without any meaningful discussion by the ALJ reconciling the alleged inconsistencies between Dr. Palin's and Dr. Allred's opinion, the Court is unable to agree that "good reason" has been given for rejecting Dr. Palin's opinion. Further, the ALJ never indicates that he considered the "length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty .

. ." as required by 20 C.F.R. § 404.1527(c)(2). See Gayheart, 710 F.3d at 376. Accordingly, the Court finds that because the ALJ failed to provide "good reasons" for declining to give any weight to Dr. Palin's opinion, the ALJ did not properly apply the treating physician rule in this case.

The Court must now determine whether the ALJ's error was harmless. A violation of the "good reasons" rule can be deemed "harmless error" if:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinions; or (3) where the Commissioner has met the goal of § 1527[(c)](2) . . . even though she has not complied with the terms of the regulation.

Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. Apr. 28, 2010) (Citation omitted).

The Court does not find that the first or second exception applies to the case at hand. The Court does not find Dr. Palin's opinion to be patently deficient, nor does the Court find the ALJ adopted the opinion. The goal of § 1527(c)(2) is to provide the most comprehensive and accurate picture of the plaintiff's medical impairments. The treating physician "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). Because the ALJ's opinion does not sufficiently explain the reasons for his conclusion, the Court cannot say that the ALJ has otherwise met the regulation's goal.

The Court notes that a proper analysis of the record might not support giving controlling weight to Dr. Palin's opinion. However, the Sixth Circuit "has made clear that [it] do[es] not hesitate to remand when the Commissioner has not provided good reasons for the weight given

to a treating physician's opinion." Gayheart, 710 F.3d at 380 (brackets in original) (quoting Colev. Astrue, 661 F.3d 931, 939 (6th Cir. 2011).

Accordingly, the Court will recommend that the case be remanded to the ALJ for clarification of the reasons for assigning no weight to the treating physician's opinion pursuant to the factors set forth in 20 C.F.R. § 1527(c)(2).

Next, the Plaintiff argues that the ALJ erred in finding two state agency opinions concerning Plaintiff's physical limitations "fully persuasive." [Doc. 16 at 12]. In this regard, the Plaintiff asserts that because the Physical RFC Assessment was unsigned and included no identifying information about who completed it and what his or her medical specialty was, it cannot be entitled to any weight. [Id. at 13].

The Commissioner contends that the Physical RFC Assessment was properly considered, albeit the assessment was not signed, and that the Plaintiff has failed to show how his RFC is inconsistent. [Id. at 9]. The Commissioner also points out that the Physical RFC Assessment was later approved by state agency physician Dr. Kanika Chaudhuri and was consistent with the evidence in the record pertaining to the Plaintiff's physical functioning. [Id.]. Further, the Commissioner asserts that the Plaintiff's HIV was asymptomatic and the physical examinations were generally unremarkable which supports the ALJ's RFC determination. [Id.].

The Court finds that the ALJ's use of an unsigned Physical RFC Assessment completed by an unnamed state agency consultant to be erroneous. Though the ALJ cited other evidence in addition to the Physical RFC Assessment, such as Knox County Health Department's report and the Plaintiff's daily activities [Tr. 14-15], which supported the conclusion that the Plaintiff could perform medium work, the Court finds the additional evidence relied upon is not sufficient to overcome the error. The courts in this district have held, "any use

of an unsigned consultative examination report in an unfavorable decision is an error requiring a remand." Cramer v. Astrue, No. 1:08-CV-176, 2009 WL 2927286, *6 (E.D. Tenn. Sept. 3, 2009); see also Petty v. Astrue, No. 3:10-CV-426, 2012 WL 252729 (E.D. Tenn. Jan. 6, 2012). Accordingly, the Court recommends the case be remanded to the ALJ on this issue as well.

Finally, the Plaintiff maintains that the ALJ should not have given the opinion of Dr. Allred great weight without incorporating the limitations which were contained in her report. [Doc. 16 at 13]. In other words, the Plaintiff contends that the ALJ should have included the more specific "moderately" and "markedly" limitations, see supra 5, in the RFC determination.

The Commissioner maintains that the Plaintiff has failed to show how the ALJ's RFC findings did not adequately represent Dr. Allred's findings. [Doc. 18 at 8]. The ALJ, according to the Commissioner, translated the restrictions described by Dr. Allred into specific work-related capacity limitations. [Id.]

Having concluded that a remand is necessary in part to clarify the difference between the limitations opined by Dr. Palin and Dr. Allred, the Court need not address this remaining issue at this time.

## VI. CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[1] that the Plaintiff's Motion for Summary Judgment **[Doc. 15]** be **GRANTED IN PART** and **DENIED IN PART**, and that this case be **REMANDED**. It is further **RECOMMENDED** that the Commissioner's Motion for Summary Judgment **[Doc. 17]** be **DENIED**. Upon remand, the undersigned recommends that the ALJ: (1) explain the reasons, pursuant to 20 C.F.R. § 404.1527(c), for the weight assigned to Dr. Palin's opinion, including the inconsistencies, if any, between the opinions of Drs. Palin and Allred; (2) reevaluate the Mental RFC Assessment completed by Dr. Davis by explaining the weight assigned to the assessment; and (3) if the ALJ intends to rely on the Physical RFC Assessment, a signature from the original state agency consultative examiner and/or new review should be obtained.

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. Pro. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).